## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITY CHURCH OF GOD IN CHRIST OF YORK, | : | No. 1:23cv678 |
| Plaintiff | : | (Judge Munley) |
| | : | |
| v. | : | |
| | : | |
| CHURCH MUTUAL INSURANCE COMPANY, | : | |
| Defendant | : | |

## MEMORANDUM

Before the court for disposition is the motion for summary judgment filed by Defendant-Counterclaim Plaintiff Church Mutual Insurance Company (hereinafter "Church Mutual") in this case involving a breach of contract of Church Mutual's insurance contract with Plaintiff-Counterclaim Defendant Unity Church of God in Christ of York (hereinafter "Unity Church"). Church Mutual has counterclaimed seeking a declaratory judgment that water damage to Unity Church's premises (hereinafter the "Church") was outside the coverage of the insurance contract. The parties have briefed their respective positions and, the motion is ripe for disposition.[1]

---

[1] This case was transferred to the undersigned from the Honorable Sylvia H. Rambo (Ret.) on August 30, 2024.

## I.    BACKGROUND

Unity Church is a religious organization that maintains its regular office in York, Pennsylvania. (Doc. 1, foll. Notice of Removal (hereafter "Not. of Rem."), Complaint ¶ 1 (hereinafter "Compl.")). Church Mutual is a corporation organized and existing under the laws of the State of Wisconsin and maintains a principal place of business in Merrill, Wisconsin. (Not. of Rem. ¶ 4). At all relevant times, Unity Church maintained an insurance policy, policy number 0208870-25-189676, covering the Church issued by Church Mutual. (Compl. ¶¶ 3,5).

In the complaint, Unity Church alleges that on or about August 19, 2021, it suffered a sudden and accidental direct physical loss to the insured Church while its insurance policy with Church Mutual was in full force and effect, specifically, that wind damage to the roof of the Church allowed rainwater to leak into the sanctuary of the Church. (Id. ¶ 5, Ex. A). Unity Church further alleges that it provided prompt notice of the covered loss to Church Mutual, cooperated with Church Mutual's investigation, mitigated damages where reasonable, and complied with all conditions precedent. (Id. ¶ 6). Church Mutual denied coverage for the loss despite benefits owed under the insurance policy. (Id. ¶¶ 7-9). Unity Church alleges it is owed for damaged property in the amount of $115,113.09 (Not. of Rem. ¶ 10).

On March 16, 2023, Unity Church instituted the instant lawsuit by filing a complaint in the Court of Common Pleas of Philadelphia County. (Compl.) On April 24, 2023, Church Mutual removed the action to this court. (Not. of Rem.) Unity Church's complaint contained two counts, Count I, Breach of Contract and Count II, Bad Faith. (Compl. ¶¶ 11-16). On April 28, 2023, the parties stipulated to the dismissal of Unity Church's bad faith claim, which this court endorsed on May 1, 2023. (Docs. 2-3). On May 15, 2023, Church Mutual answered the complaint and asserted a counterclaim for a declaratory judgment that the water damage to the Church was outside the policy's coverage because the damage was caused by rain. (Doc. 4). On February 29, 2024, Church Mutual filed the instant motion for summary judgment, which seeks judgment on the complaint's breach of contract claim and declaratory relief that Unity Church's loss was not covered by the insurance policy. (Doc. 14).

## II.    JURISDICTION

The court has jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332. The parties are citizens of different states. (Not. of. Rem. ¶¶ 1-5). Additionally, the amount in controversy exceeds $75,000. (Id. ¶ 10). Because complete diversity of citizenship exists among the parties and the amount in controversy exceeds $75,000, the court has jurisdiction over this case. See 28 U.S.C. § 1332 ("district courts shall have original jurisdiction of all civil actions

3

where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different states[.]"). As a federal court sitting in diversity, the substantive law of Pennsylvania shall apply to the instant case. <u>Chamberlain v. Giampapa</u>, 210 F.3d 154, 158 (3d Cir. 2000) (citing <u>Erie R.R. v. Tompkins</u>, 304 U.S. 64, 78 (1938)).

## III.   LEGAL STANDARD

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Material facts are those "that could alter the outcome" of the litigation, and "disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." <u>EBC, Inc. v. Clark Bldg. Sys., Inc.</u>, 618 F.3d 253, 262 (3d Cir. 2010) (quoting <u>Clark v. Modern Grp. Ltd.</u>, 9 F.3d 321, 326 (3d Cir. 1993)).

At the Rule 56 stage, the court's function is not to "weigh the evidence and determine the truth of the matter" but rather "to determine whether there is a genuine issue for trial." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986). The court must view the facts and evidence presented "in the light most

4

favorable to the non-moving party" and must "draw all reasonable inferences in that party's favor." Thomas v. Cumberland Cnty., 749 F.3d 217, 222 (3d Cir. 2014). This evidence, however, must be adequate—as a matter of law—to sustain a judgment in favor of the nonmoving party on the claim or claims at issue. Liberty Lobby, 477 U.S. at 250-57; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986). A "scintilla of evidence" supporting the nonmovant's position is insufficient; "there must be evidence on which the jury could reasonably find for the [nonmovant]." Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 192 (3d Cir. 2015) (quoting Liberty Lobby, 477 U.S. at 252) (alteration in original). Succinctly stated, summary judgment is "put up or shut up time" for the nonmoving party. Daubert v. NRA Grp., LLC, 861 F.3d 382, 391 (3d Cir. 2017) (quoting Berkeley Inv. Grp. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006)).

## IV.   DISCUSSION

Church Mutual seeks summary judgment on Count I of the complaint, Unity Church's breach of contract claim, and a declaratory judgment that the loss to the Church was outside of the insurance policy's coverage.

The law provides that in an insurance coverage dispute such as this, the "insured bears the initial burden to make a prima facie showing that a claim falls within the policy's grant of coverage, but if the insured meets that burden, the

insurer then bears the burden of demonstrating that a policy exclusion excuses

the insurer from providing coverage if the insured contends it does." State Farm

Fire and Cas. Co. v. Est. of Mehlman, 589 F.3d 105, 111 (3d Cir. 2009) (applying

Pennsylvania law). Under the relevant provision of Unity Church's policy with

Church Mutual, a covered loss means:

> **CAUSES OF LOSS – BROAD FORM**
>
> …
>
> **A. Covered Causes of Loss**
>
>> When Broad is shown in the Declarations, Covered Causes of Loss means the following:
>>
>> **4.** Windstorm or hail, but not including: . . .
>>
>>> **c.** Loss or damage to the interior of any building or structure, or the property inside the building or structure, caused by rain, snow, sand or dust, whether driven by wind or not, unless the building or structure first sustained wind or hail damage to its roof or walls through which the rain, snow, sand or dust enters; . . .

(Doc. 14-3 ¶ 9; see also Doc. 4-1, ECF p. 58).[2]

Neither party disputes the essential terms of this provision of the insurance

policy. Instead, at issue in this case is the cause of Unity Church's loss: whether

---

[2] The commercial property coverage part declarations page, (Doc. 4-1, ECF p. 34), refers to the coverages provided schedule, (Id., ECF p. 36), which, in turn, refers to "Broad" covered causes of loss for the building, which are listed in the Causes of Loss – Broad Form, (Id., ECF pp. 58-65).

it was caused merely by rain leaking into the internal structure of the Church, and thus outside the policy's coverage, or whether it was caused by rain leaking into the Church after first sustaining wind damage to its roof, in which case the loss is covered.

Church Mutual makes three arguments in favor of its motion for summary judgment, that: (1) Unity Church failed to provide any expert testimony that the water damage to the Church was preceded by wind damage; (2) lay witness testimony and documentation establishes that the Church had pre-existing roof damage, water infiltration issues, and no evidence of storm damage; and (3) its own expert engineer concluded that the damage was not from wind damage, but rather water ponding on the roof of the Church.

In support of its arguments, Church Mutual points to deposition testimony of Unity Church's own witnesses as evidence that the Church had pre-existing roof damage and water infiltration issues. First, Unity Church's pastor, Pastor Darnell Bowman, testified "[t]he hatch area, that's where the problem was." (Def's Exh. B 86:12-88:20). The hatch area refers to a covered opening on the roof of the Church that allows access to the roof from inside. (Def's Exh. E at p. 45). Pastor Bowman additionally testified that the Church's roof had issues with water leaking into the sanctuary prior to the date of the loss. (Def's Exh. B 36:9-36:18).

Second, Troy Smith, Vice President of Double D Roofing, a roofing company which often donated its services to Unity Church, testified that the company inspected the hatch area of the roof on August 17, 2021, two days prior to the loss, and that on August 20 and 23, 2021, the company performed repairs on the hatch area including "reflashing," recaulking, and raising the hatch by four inches. (Def's Exh. D 21:2-24:21). Mr. Smith testified that he believed water entered the Church around the roof hatch "because the roof hatch was pretty low to the plane of the roof." (Id. 21:1-21:14). He did not notice any obvious signs of storm damage. (Id. 31:6-31:20). According to Pastor Bowman, there were no leaks after Double D Roofing repaired the hatch area on the Church's roof on August 20 and 23, 2021. (Def's Exh. B. 72:1-72:8).[3]

Lastly, Hezekiah Ford of Ford Electrical Services, which performed some repair work to the interior of the Church, testified that the problem was a clogged drain on the roof, testifying, "the water had nowhere to go, so it was coming through the roof and coming into the church sanctuary area." (Def's Exh.G 22:1-22:25).

---

[3] In its statement of material facts (Doc. 14-3), Church Mutual asserts that the repairs to the roof by Double D Roofing occurred prior to the date of the loss. This assertion is belied by Mr. Smith's testimony that the roof was merely inspected on August 17, 2021, but that repairs were not made until August 20 and 23, 2021. (Def's Exh. D 21:23-21:25, 22:1-22:4, 22:13-22:17).

Church Mutual also provides documentary evidence supporting that any damage to the roof was not caused by storm damage. Unity Church leased some of its space to a daycare, Sunshine Christian Daycare, which submitted its own insurance claim to Erie Insurance for a loss due to water damage on August 21, 2021. (Def's Exh. B 78:17-78:25). Erie Insurance had the roof inspected by a company, Ladder Now, on August 24, 2021, which took pictures of the roof and concluded that there was no evidence of storm-related damage to the roof and that any water infiltration was instead caused by normal deterioration or by wind-driven rain. (Def's Exh. E at p. 1, 3). Church Mutual's own inspector, Timmothy Ramer of GS4, concluded there was no evidence of storm or wind-related damage that would allow water to enter the Church. (Def's Exh. F).

Lastly, Church Mutual hired an expert to draft a report, structural engineer Russell Daniels, P.E., who concluded that deterioration or defects in the roof system allowed water to pond on the roof. (Def's Exh. H). Mr. Daniels opined that the 3.28 inches of rain that fell on August 18, 2021, was the source of the water infiltration because that volume of water exceeded the capacity of the roof drains. (Id.) Further, Mr. Daniels analyzed peak wind speeds during the relevant time period and concluded that none of the wind speeds would have been sufficient to damage the Church's roof. (Id.) In his professional engineering opinion, the water infiltration to the Church was not caused by wind damage. (Id.)

Unity Church responds by raising purported material factual disputes, challenging the opinion testimony of the lay witnesses, and calling into question the credibility of Church Mutual's expert. Specifically, Unity Church points to Pastor Bowman's testimony that the roof damage was caused by a storm and that water subsequently infiltrated the Church and "completely messed everything up." (Doc. 17 at p. 20; Def's Exh. B 96:2-96:19). Double D Roofing subsequently repaired the hatch area of the Church's roof, and it was only after these repairs that the roof was inspected by Ladder Now, Mr. Ramer, and Mr. Daniels, making their observations inconclusive as to the cause of the water infiltration. (Doc. 17 at p. 12). Further, Church Mutual argues that Mr. Smith and Mr. Ford's testimony, and the report from Ladder Now, offer expert opinions from witnesses unqualified to make those conclusions. (Id. at pp. 10, 12). Lastly, Unity Church argues that Mr. Daniels' expert report is neither credible nor conclusive. (Id. at p. 12).

After a careful review of the parties' arguments and the record, the court finds no genuine dispute of material fact with respect to causation of the water infiltration. Even agreeing with Unity Church that Mr. Smith, Mr. Ford, and the insurance inspector from Ladder Now are not qualified as experts to make a conclusion as to the cause of the water infiltration pursuant to Federal Rule of Evidence 702, the same argument undermines its only witness supporting that

the water infiltration was preceded by wind damage, Pastor Bowman. While

Pastor Bowman testified that the damage was caused by a storm on August 19,

2021, this description of the alleged cause of the water infiltration is from a lay

witness testimony and is lacking in specificity where the insurance policy

excludes damage from wind-driven rain but covers rain damage that is preceded

by wind damage. In other words, testimony that the water infiltration was caused

by a "storm" is not helpful where the insurance policy makes a distinction

between different categories of storm damage, covering one type and not

another. Further, Pastor Bowman testified that the problem area of the roof was

the hatch area, which, after repairs by Double D Roofing, stopped leaking. There

is nothing in the record to suggest that the hatch area was damaged by wind.

Moreover, Church Mutual submitted an expert report wherein the expert

structural engineer concluded that it would not have been possible, even with

peak winds during the relevant time period, to damage the roof and that instead

the damage was caused by water pooling on the Church's roof. Unity Church has

not provided any expert witness to rebut this conclusion.

Summary judgment is the "put up or shut up time" for the nonmoving party,

and Unity Church has simply not put up any evidence from which a reasonable

jury could conclude that the water infiltration was preceded by wind damage.

Accordingly, Church Mutual's motion for summary judgment will be granted as to

11

the breach of contract claim and its counterclaim for a declaratory judgment that the water infiltration was not within the insurance policy's coverage.

## V.    CONCLUSION

For the reasons set forth above, Church Mutual's motion for summary judgment will be granted. Unity Church has raised no genuine dispute of material fact as to the causation of the water infiltration to the Church and the water infiltration damage is not covered by its insurance policy with Church Mutual. An appropriate order follows.

Date: 9/11/24

JUDGE JULIA K. MUNLEY
United States District Court